# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO QUIROZ,<br><br>    Petitioner,<br><br>    v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | Case No. 1:25-cv-00765-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENTS' MOTION TO DISMISS AND DISMISS PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 12) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Mexico. (ECF No. 12 at 1.[1]) The petition alleges that Petitioner entered the United States in the 1980s.[2] (ECF No. 1 at 6.) On November 18, 2004, an immigration judge ("IJ") denied Petitioner's application for cancelation of removal and granted him voluntary departure. (ECF No. 12-1 at 8–9.) Petitioner appealed, and on March 31, 2006, the Board of Immigration Appeals ("BIA") dismissed the appeal, reinstated voluntary departure, and allowed Petitioner to voluntarily depart the United States within thirty days of the date of the

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

[2] Respondents have submitted the declaration of a deportation officer that states Petitioner originally entered the United States on or about October 29, 1992. (ECF No. 12-1 at 3.) Respondents have submitted a copy of a Notice to Appear, dated June 1, 2000, which states that Petitioner entered the United States at or near San Ysidro, California, on October 29, 1992. (Id. at 6.)

1

order. (ECF No. 12-1 at 10–12.) On April 28, 2006, Petitioner filed a petition for review with the Ninth Circuit. On November 4, 2008, the Ninth Circuit denied in part and dismissed in part the petition for review. (Id. at 15–16.) The mandate issued on December 31, 2008. (Id. at 16.)

Petitioner failed to voluntarily depart the United States, which resulted in an order of removal. (ECF No. 12-1 at 4.) On or about June 23, 2011, Petitioner was removed from the United States. (Id. at 17.)

On March 25, 2024, Immigrations and Customs Enforcement ("ICE") received an anonymous tip via the Homeland Security Investigations Tip Line alleging an individual who matched Petitioner's description reentered the United States. An investigation showed a probable match to Petitioner. (ECF No. 12-1 at 19.) On May 7, 2025, Petitioner was arrested and served with a Notice of Intent/Decision to Reinstate Prior Order of Removal, dated May 7, 2025, pursuant to section 241(a)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1231(a)(5). (ECF No. 1 at 8; ECF No. 12-1 at 20.) Petitioner has been detained at the Golden State Annex ("GSA") since May 7, 2025. (ECF No. 12-1 at 4.)

Petitioner was referred to the United States Citizenship and Immigration Service ("USCIS") for a reasonable fear review, which was conducted on May 19, 2025 without the benefit of counsel.[3] (ECF No. 1 at 8; ECF No. 12-1 at 4.) On May 22, 2025, USCIS issued a Record of Negative Reasonable Fear Finding and referred its decision to an IJ. (ECF No. 12-1 at 21–25.) On May 30, 2025, an IJ concurred with USCIS's reasonable fear determination and returned the case to the Department of Homeland Security ("DHS") for Petitioner's removal. (Id. at 26–27.)

Petitioner filed a motion to reopen with the BIA. The motion also included a request for an emergency stay of removal. On June 17, 2025, the BIA denied Petitioner's stay of removal without explanation. (ECF No. 1 at 9.) On June 23, 2025, Petitioner filed a petition for review with the Ninth Circuit along with a motion to stay removal. Petitioner's removal has been stayed and the petition for review remains pending. (ECF No. 12-1 at 4, 29–30.)

---

[3] The petition alleges that USCIS called Petitioner's counsel directly and asserted that Petitioner would be given a continuance. However, Petitioner was forced to proceed with the interview without counsel. (ECF No. 1 at 8.)

2

On June 24, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On July 16, 2025, Respondent filed an opposition to the motion for TRO. (ECF No. 10.) On July 30, 2025, Petitioner filed a notice of withdrawal of the motion for TRO without prejudice. (ECF No. 11.) Respondents have filed a motion to dismiss the petition, Petitioner has filed an opposition, and Respondents have filed a reply. (ECF Nos. 12–14.)

**II.**

**DISCUSSION**

In the petition, Petitioner raises the following claims for relief: (1) ICE exceeded its statutory authority under 8 U.S.C. § 1231(a)(5) to reinstate Petitioner's order of removal; (2) Petitioner's detention violates substantive and procedural due process; (3) violation of the Violation Against Women Act's ("VAWA") protective framework; (4) systematic targeting of protected victims and policy violations; (5) violation of the Administrative Procedures Act; (6) violation of the Villa-Anguiano Doctrine. (ECF No. 1 at 13–19.) Petitioner requests the Court to: order Respondents to release Petitioner from custody immediately, declare the reinstatement order is unlawful and therefore invalid and void, declare that Petitioner's detention violates due process, order Respondents to vacate the reinstatement order and either terminate removal proceedings or place Petitioner in removal proceedings under INA § 240 where he may pursue available relief, find that ICE lacked jurisdiction to issue the reinstatement order due to regulatory violations and Petitioner's authorized stay status, and order that Petitioner be permitted to pursue his pending USCIS applications without interference from removal proceedings. (ECF No. 1 at 19.)

In the motion to dismiss, Respondents characterize Petitioner's six claims as relying on the following three assertions that Respondents argue are meritless as a matter of law: (1) USCIS's prima facie determination on Quiroz's VAWA petition protects him from a reinstated removal order; (2) ICE did not provide him with 8 C.F.R. § 214.8(b) notice; and (3) his conditions of confinement violate due process. (ECF No. 12 at 7–8.)

///

**A. Jurisdiction**

In the motion to dismiss, Respondents argue that 8 U.S.C. "§ 1252(g) strips this Court of jurisdiction to grant the relief Quiroz seeks." (ECF No. 12 at 8.) In the opposition, Petitioner clarifies that the "habeas petition challenges ICE's statutory and constitutional authority to detain, not the validity of the underlying reinstatement order. This distinction preserves district court jurisdiction while avoiding § 1252(g) jurisdictional bars that apply to challenges to removal decisions themselves." (ECF No. 13 at 2.)

The Court notes that Petitioner's clarification in the opposition is at odds with the petition itself, which specifically asks the Court to "[d]eclare that the reinstatement order violates federal law and constitutional due process and is therefore invalid and void," "[o]rder Respondents to vacate the reinstatement order and either terminate removal proceedings or place Petitioner in removal proceedings under INA § 240 where he may pursue available relief," "[f]ind that ICE lacked jurisdiction to issue the reinstatement order due to regulatory violations and Petitioner's authorized stay status," and "[o]rder that Petitioner be permitted to pursue his pending USCIS applications without interference from removal proceedings." (ECF No. 1 at 19.)

Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. "§ 1252(g).

> The Supreme Court has given a "narrow reading" to § 1252(g). *AADC*, 525 U.S. at 487, 119 S.Ct. 936; *see also Regents of the Univ. of Cal.*, 591 U.S. at 19, 140 S.Ct. 1891 ("Section 1252(g) is ... narrow."). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' " *AADC*, 525 U.S. at 482, 119 S.Ct. 936 (emphasis in original) (quoting 8 U.S.C. § 1252(g)). Instead of "sweep[ing] in any claim that can technically be said to 'arise from' the three listed actions," the provision "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) (plurality opinion) (describing the holding of *AADC*). "There are of course many ... decisions or actions that may be part of the deportation process" not implicated by § 1252(g), "such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the

///

adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 482, 119 S.Ct. 936.

Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025).

The Supreme "Court has characterized § 1252(g) as a 'discretion-protecting provision.'" Ibarra-Perez, 154 F.4th at 996 (quoting Reno v. Am.-Arab Anti-Discrimination Comm. (AADC), 525 U.S. 471, 487 (1999)). In Zadvydas v. Davis, 533 U.S. 678 (2001), which concerned a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6), the Supreme Court found that of the "several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available . . . none applies here" in part because the petitioners did "not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion." Zadvydas, 533 U.S. at 687, 688. However, § 1252(g)'s jurisdictional bar covers claims challenging the government's discretionary authority to decide "whether" or "when" to execute the removal order. Rauda v. Jennings, 55 F.4th 773, 777 (9th Cir. 2022) (quoting Tazu v. Att'y Gen. United States, 975 F.3d 292, 297 (3d Cir. 2020)). Courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025).

> The INA contains a provision entitled "Exclusive means of review," which reads, in relevant part:
>
>> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means* for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.
>
> 8 U.S.C. § 1252(a)(5) (emphasis added). The language of the statute is clear. The exclusive means to challenge an order of removal is the petition for review process.

Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012). "The INA also contains a 'zipper clause' that consolidates all 'questions of law and fact . . . arising from any action taken or

5

proceeding brought to remove an alien' into a petition for review." Martinez, 704 F.3d at 622 (quoting 8 U.S.C. § 1252(b)(9)). "This statutory scheme was designed to 'limit all aliens to one bite of the apple with regard to challenging an order of removal.'" Id. (quoting Singh v. Gonzales, 499 F.3d 969, 976 (9th Cir. 2007)).

Section "1252(b)(9) has built-in limits. By channeling only those questions 'arising from any action taken or proceeding brought to remove an alien,' the statute excludes from the PFR [petition for review] process any claim that does not arise from removal proceedings." J.E.F.M. v. Lynch, 837 F.3d 1026, 1032 (9th Cir. 2016). "Accordingly, claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." Id. Thus, "an immigrant c[an] challenge his [prolonged] administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9)." Id. (citing Nadarajah v. Gonzales, 443 F.3d 1069, 1075–76 (9th Cir. 2006)). On the other hand, claims that "are bound up in and an inextricable part of the administrative process" fall within the scope of § 1252(b)(9) and must be raised through the PFR process. J.E.F.M., 837 F.3d at 1033.

The Ninth Circuit has held a reinstatement order "qualifies as an order of removal that can only be challenged in a petition for review filed directly with our court." Morales-Izquierdo v. Dep't of Homeland Sec., 600 F.3d 1076, 1082 (9th Cir. 2010), abrogated on other grounds by Garfias-Rodriguez v. Holder, 702 F.3d 504, 516 (9th Cir. 2012). "Moreover, because the Reinstatement Order is an 'order of removal,' it is subject to the INA's zipper clause. Under the zipper clause, any 'questions of law and fact' arising from an order of removal must be raised in a petition for review of that order.[4]" Morales-Izquierdo, 600 F.3d at 1082 (footnote in original).

Respondents argue that Petitioner "necessarily challenges his reinstatement order, and thus the Court lacks jurisdiction to consider it under 8 U.S.C. § 1252(g)." (ECF No. 14 at 1.) To the extent Petitioner challenges the reinstatement order itself, the Court finds it lacks jurisdiction pursuant to 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9). See Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider

---

[4] In the REAL ID Act, Congress amended the zipper clause explicitly to strip district courts of habeas corpus jurisdiction to hear challenges to final orders of removal, rendering courts of appeals with exclusive jurisdiction to hear challenges to removal orders. *See* REAL ID Act § 106(a)(2) (codified at 8 U.S.C. § 1252(b)(9)).

*sua sponte* issues that the parties have disclaimed or have not presented."); Lopez-Velazquez v. Johnson, No. 16-CV-01226-EMC, 2016 WL 4073338, at *4 (N.D. Cal. Aug. 1, 2016) (finding the district court "lacks jurisdiction to hear the habeas petition because it is ultimately a challenge to the reinstated final order of removal" and "[p]er Section 1252(a)(5), 'a petition for review filed with an appropriate court of appeals in accordance with this section shall be the *sole and exclusive* means for review of an order of removal . . . .'"); Monge-Piedra v. Dep't of Homeland Sec., No. C14-0457-TSZ, 2014 WL 5782274, at *3 (W.D. Wash. Nov. 6, 2014) (finding district court lack jurisdiction over "claims either directly or indirectly challeng[ing] the validity of petitioner's reinstated order of removal").

The Court finds that the first, third, fourth, fifth, and sixth claims for relief directly or indirectly challenge the reinstatement order itself and/or the government's discretionary authority to decide "whether" or "when" to execute the removal order. Accordingly, this Court lacks jurisdiction over those claims, and they should be dismissed. As a portion of the second claim for relief challenges Petitioner's present detention as unlawful without indirectly challenging the reinstatement order itself and/or the government's discretionary authority to decide "whether" or "when" to execute the removal order, this Court has jurisdiction over that claim.[5] See Constantinovici v. Bondi, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) ("Petitioner challenges his present detention as unlawful . . . this Court has jurisdiction to consider Petitioner's claims.").

Petitioner contends that "[d]etention authority presents distinct legal questions from removal proceedings. Petitioner challenges whether ICE has authority to detain someone with VAWA protection status, immediate adjustment eligibility, and no legitimate detention purpose—not the reinstatement decision itself." (ECF No. 13 at 5.) Although detention authority may present distinct legal questions from underlying removal orders and proceedings, the first, third, fourth, fifth, and sixth claims as currently written do not implicate such "distinct legal questions." While the gravamen of Petitioner's dispute with Respondents may be to challenge

---

[5] The Court will address in section II(B), infra, the portions of the second claim for relief that should be dismissed for lack of jurisdiction.

7

"whether ICE has authority to detain someone with VAWA protection status, immediate adjustment eligibility, and no legitimate detention purpose," the petition as currently written does not do that.

**B. Second Claim for Relief**

In his second claim for relief, Petitioner asserts that his "detention violates substantive due process by constituting arbitrary government action lacking any rational basis," "ICE's process violated procedural due process," and his "detention conditions violate due process by subjecting Petitioner to punitive conditions." (ECF No. 1 at 14.)

1. Substantive Due Process

Petitioner asserts that his detention "violates substantive due process by constituting arbitrary government action lacking any rational basis," arguing:

> When USCIS has determined with full knowledge of relevant facts that an individual merits protection, ICE's contradictory enforcement action is fundamentally arbitrary. This arbitrariness is compounded by: (1) ICE's targeting of a protected class Congress specifically sought to shield; (2) the pretextual nature of enforcement against an individual with immediate adjustment eligibility; (3) the lack of any legitimate law enforcement purpose served by the detention; and (4) the waste of government resources pursuing removal of someone likely to obtain lawful status.

(ECF No. 1 at 14.) The Court finds that this portion of the second claim for relief directly or indirectly challenges the reinstatement order itself and the government's discretionary authority to decide "whether" or "when" to execute the removal order. Accordingly, for the reasons stated in sections II(A), supra, this Court lacks jurisdiction and the substantive due process portion of the second claim for relief should be dismissed.

2. Procedural Due Process

Petitioner asserts that "ICE's process violated procedural due process by":

> (1) failing to provide constitutionally adequate notice of the basis for detention; (2) denying meaningful opportunity to contest the reinstatement determination; (3) refusing to consider material evidence bearing on removability; and (4) applying enforcement priorities in a discriminatory manner. The process provided fell far below the constitutional minimum required by Mathews v. Eldridge, 424 U.S. 319 (1976).

(ECF No. 1 at 14.) Although the second claim for relief asserts that ICE's process violated

procedural due process by "failing to provide constitutionally adequate notice of the basis for *detention*," (ECF No. 1 at 14 (emphasis added)), the petition does not provide any further argument regarding how Respondents failed to provide constitutionally adequate notice of the basis for Petitioner's detention. Rather, the petition argues that "ICE failed to comply with 8 C.F.R. § 241.8(b) requirements for notice and opportunity to contest," which governs reinstatement of removal orders, and that "ICE categorically failed to comply with this mandatory regulation. Rather than providing Petitioner with notice of the reinstatement determination and an opportunity to contest it, ICE limited its process to a reasonable fear interview." (ECF No. 1 at 8.) Accordingly, the Court construes the petition as raising a procedural due process claim regarding the failure to provide constitutionally adequate notice of the basis for reinstatement of the removal order rather than a procedural due process claim regarding the detention itself. The Court finds that this portion of the second claim for relief directly or indirectly challenges the reinstatement order itself and the government's discretionary authority to decide "whether" or "when" to execute the removal order. Accordingly, for the reasons stated in sections II(A), supra, this Court lacks jurisdiction and the procedural due process portion of the second claim for relief should be dismissed.

### 3. Conditions of Confinement

Petitioner asserts that his detention conditions are punitive and violate due process. (ECF No. 1 at 14.) Respondents contend that Petitioner cannot challenge his conditions of confinement in a habeas proceeding, citing to Pinson v. Carvajal, 69 F.4th 1059 (9th Cir. 2023); Badea v. Cox, 931 F.2d 573 (9th Cir. 1991), Brown v. Blanckensee, 857 F. App'x 289 (9th Cir. 2021), and Alcala v. Rios, 434 F. App'x 668 (9th Cir. 2011). (ECF No. 12 at 12.) Petitioner does not address this argument in the opposition to the motion to dismiss.

A claim is cognizable in federal habeas corpus when a prisoner challenges "the fact or duration of his confinement" and "seeks either immediate release from that confinement or the shortening of its duration." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973). In contrast, a civil rights action is the proper method to challenge the conditions of confinement. McCarthy v. Bronson, 500 U.S. 136, 141–42 (1991); Preiser, 411 U.S. at 499. The Ninth Circuit has "long

held that prisoners may not challenge mere conditions of confinement in habeas corpus." Nettles v. Grounds, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) (citing Crawford v. Bell, 599 F.2d 890, 891–92 (9th Cir. 1979)). See Shook v. Apker, 472 F. App'x 702, 702–03 (9th Cir. 2012) (holding that district court did not err in treating conditions of confinement claims as arising under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), rather than 28 U.S.C. § 2241); Alcala v. Rios, 434 F. App'x 668, 669–70 (9th Cir. 2011) (holding that district court did not err in finding that conditions of confinement claims are not cognizable under 28 U.S.C. § 2241).

In Pinson, two federal prisoners "challenge[d] the dismissals of their habeas corpus petitions in which they asserted that their incarceration during the COVID-19 pandemic violated the Eighth Amendment and sought release from custody." Pinson, 69 F.4th at 1062. Holding that "the relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested," the Ninth Circuit found that "Sands has failed to allege facts to support his legal contention that his detention was unlawful because no set of conditions exist that would cure the constitutional violations." Id. at 1072, 1075. "Because Sands's claims lie outside the historic core of habeas corpus . . . the district court properly found it lacked jurisdiction to hear Sands's petition." Id. at 1075. Subsequently, the Ninth Circuit has stated that "Pinson solidified the rule that a habeas claim is one challenging the fact of confinement, rather than the conditions of confinement." Doe v. Garland, 109 F.4th 1188, 1194 (9th Cir. 2024). Accordingly, the conditions of confinement portion of the second claim for relief should be dismissed.

**C. Zadvydas**

In the opposition to the motion to dismiss, Petitioner states:

> Further, the government asserts at pages 3-4 that Petitioner is subject to "mandatory detention under § 1231(a)(2)" but fails to acknowledge that at the time their own brief was filed, Petitioner has been detained since May 7, 2025—well beyond the 90-day removal period that forms the statutory basis for such detention. Section 1231(a)(2) authorizes detention "during the removal period," which is defined as 90 days from the final removal order. 8 U.S.C. § 1231(a)(1)(A). After this period expires, continued detention requires additional justification and is subject to heightened constitutional scrutiny. The government cannot rely on "mandatory detention" language to justify prolonged confinement

10

that extends far beyond the statutory timeframe, particularly when material circumstances have changed. Courts have recognized that post-removal-period detention must be justified by ongoing necessity, not categorical mandates. Here, USCIS's expert determination that Petitioner presumptively qualifies for VAWA protection, combined with his pending adjustment application and strong community ties, eliminates any rational basis for continued post-removal-period detention. He has a Motion to Reopen pending at the BIA and a Petition for Review with current stay of removal at the Ninth Circuit. This makes his detention period indefinite in nature. The extended nature of Petitioner's detention—now exceeding four months beyond the statutory removal period—demonstrates that this is not the brief, administratively efficient detention Congress contemplated in § 1231(a)(2), but prolonged confinement lacking legitimate justification. The government's "mandatory detention" characterization cannot override the constitutional and statutory limits on extended immigration detention, particularly when the individual poses no flight risk and is pursuing congressionally authorized victim-based relief.

(ECF No. 13 at 7.)

The Court notes that nowhere in the petition does Petitioner assert a prolonged detention claim under Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner may not use an opposition to raise or argue new allegations or claims not in the petition. Cruz v. Ford Motor Co., No. 1:24-cv-00263-SAB, 2024 WL 3697549, at *7 (E.D. Cal. Aug. 7, 2024). See also Minor v. Fedex Off. & Print Servs., Inc., 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) (disregarding a plaintiff's newly raised claim and related allegations in his opposition because a plaintiff "may not use his opposition to raise and argue new allegations or claims not in the complaint."); Forrett v. Gourmet Nut, Inc., 634 F. Supp. 3d 761, 765 (N.D. Cal. 2022) (same); Clark v. Beard, No. 11-CV-03520-YGR (PR), 2015 WL 4452470, at *4 n.7 (N.D. Cal. July 20, 2015), aff'd in part, 715 F. App'x 776 (9th Cir. 2018) (refusing to consider a claim that was not previously raised in an amended complaint when deciding a dispositive motion).

## III.

## RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Respondents' motion to dismiss (ECF No. 12) be GRANTED;

**2.** The petition for writ of habeas corpus (ECF No. 1) be DISMISSED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **December 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge